IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MEADOWBROOK SHOPPING PLAZA, LLC a/k/a Meadowbrook Plaza LLC,**

*Plaintiff,*

v.

**NATIONWIDE ASSURANCE COMPANY**,

*Defendant.*

CAUSE NO. 3:23-CV-3093-CWR-LGI

**ORDER**

Before the Court are the parties' cross-motions for summary judgment. Docket Nos. 41 and 44. For the reasons that follow, both motions will be denied.

**I.    Factual and Procedural History**

Meadowbrook Shopping Plaza, LLC purchased a building at 3895 Metro Drive ("the Building") in 1995. The Building's uses were varied. At some point, Meadowbrook operated a cellular service company, Unitel Corp., at the site. After Meadowbrook stopped operating Unitel, it began to rent the Building to others. One of its tenants was another cellular service company, Southern Wireless. Another tenant used a portion of the Building to operate a beauty supply store.[1]

Around 2018, Khaldoun Abaji approached Meadowbrook about utilizing the Building for his business, a store called Kids Avenue. Mr. Abaji previously operated out of the

---

[1] It is not clear whether this tenant utilized the entire Building as a beauty supply store or whether it was a shared space with another tenant.

Metrocenter Mall until that mall closed. Mr. Abaji and Meadowbrook came to an oral agreement where Mr. Abaji paid Meadowbrook $800 a month for the space.

The parties agree that Mr. Abaji stored his merchandise inside the Building but did not re-open his storefront before the events giving rise to this lawsuit. Additionally, the parties seem to agree that the Building did not have electricity or gas throughout his tenancy. Less clear is whether Mr. Abaji could, or planned to, operate his storefront in the Building.

The events giving rise to this lawsuit began on December 13, 2021, when the Building was vandalized.[2] Nationwide was Meadowbrook's insurer at this time, so Meadowbrook submitted a claim for the damage. Nationwide determined that the damage totaled $132,586; however, it denied Meadowbrook's claim because, in its view, the vacancy exclusion applied. Nationwide's position was based on its conclusion that neither Meadowbrook nor Mr. Abaji utilized the Building in connection with their "customary operations."

The second event precipitating the lawsuit occurred on July 1, 2023, when the Building caught on fire. There was no indication that the sprinkler system was on when the Jackson Fire Department arrived. Richard Jones, who has been designated as an expert in forensic fire investigations, visited the scene after the fire. He noticed that the "post indicator valve" which supplied water to the sprinkler system was in the "shut" position. Adam Bomar, a Nationwide fire loss investigator, also visited the scene and noticed rust on the wrench that operated the post indicator valve. This led Mr. Bomar to opine that the valve had not been turned on for an extended period.

---

[2] At this point, the Nationwide policy classified the Building as an "Electronics Store- Television, Stereo & Phonographic (Including Parts & Supplies)." Docket No. 41-1 at 3.

Again, Meadowbrook filed a claim with Nationwide. And, again, Nationwide denied the claim. This time, Nationwide explained that denial was appropriate because the Building did not maintain an automatic sprinkler system in complete working order at the time of the fire.

Meadowbrook then filed this suit against Nationwide for denying its claims. Its causes of action include breach of contract and bad faith denial of insurance benefits.

## II.     Legal Standard

A party may move for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks omitted).

On cross-motions for summary judgment, the Court must "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Academy Health Ctr., Inc. v. Hyperion Found., Inc.*, No. 3:10-CV-552-CWR-LRA, 2017 WL 3411915, at *2 (S.D. Miss. Aug. 7, 2017) (quoting *Firman v. Life Ins. Co., of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012)).

3

**III.    Discussion**

The parties disagree over whether the vandalism and fire were covered losses under the policy. Meadowbrook's motion maintains that Nationwide should cover the damage that occurred during the vandalism because the Building was not vacant. Additionally, Meadowbrook asserts that it *did* maintain an active sprinkler system, so Nationwide wrongfully denied its claim for coverage after the fire. Nationwide sees both occurrences differently. Its motion says it should not have to face a trial for either denial.

**A.    There Is a Factual Dispute About Whether the Building was Vacant.**

The policy did not cover vacant buildings. The precise policy language defined vacancy as follows: "[s]uch building is vacant unless 31% of its total square footage is: (i) [r]ented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or (ii) [u]sed by the building owner to conduct customary operations." Docket No. 41-6 at 1.

Nationwide claims that the Building was vacant under two theories: first, that Meadowbrook was not utilizing the Building for retail purposes, and second, that Mr. Abaji never opened a retail store while renting the space. Meadowbrook disagrees on both points. It asserts that the Building was not vacant because its customary operation was to rent the Building to tenants. Mr. Abaji's failure to open a storefront in the space is of no consequence, according to Meadowbrook, because it rented the Building per *its* customary operations.

Mississippi law follows the familiar rule that "a clear and unambiguous contract will be enforced as written." *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997). Courts will afford those words "their plain, ordinary meaning and will apply them as written." *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009).

4

In interpreting a contract, the Court must "look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998).

The parties' dispute centers around the understanding of "customary operations." The term is not defined in the policy, and just like the parties, the Court has found no Mississippi case which defines it. In determining a policy term's ordinary meaning the Court may consult leading dictionaries. *Anglin v. Gulf Guar. Life Ins, Co.*, 956 So. 2d 853, 860 (Miss. 2007). In doing so, the Court notes that the word "customary" is defined as "commonly practiced, used, or observed." https://www.merriam-webster.com/dictionary/customary?src=search-dict-box. Although Mississippi's courts have not grappled with this policy term, other courts have.

A sister court in Tennessee has defined "customary" just as Webster: "commonly practiced, used, or observed." *Hollis v. Travelers Indem. Co. of Conn.*, No. 08-2350-STA, 2010 WL 1050991, at *8 (W.D. Tenn. Mar. 19, 2010) (citation omitted). Operations has been described as "your business activities occurring at the described premises." *Saiz v. Charter Oak Fire Ins. Co.*, 299 F. App'x 836, 838 (10th Cir. 2008).

The particular evidence presented informs whether a use is in line with an insured or tenant's customary operations. For example, the Tenth Circuit upheld the denial of coverage where the undisputed facts showed that a former restaurant had been converted to office space. *Id.* at 840. Though the insured regularly visited the premises and kept it in top condition, the Tenth Circuit determined that the change went against the business pursuit identified in the parties' policy. *Id.*

5

Where factual disputes exist, though, a determination about a party's customary operations belongs to the finder-of-fact. In *Midwest Env't. Res. Int'l LLC v. Colony Ins. Co.*, 5:13-CV-209-R, 2015 WL 94166, at *4 (W.D. Ky. Jan. 7, 2015), summary judgment was improper because the parties provided conflicting evidence regarding whether the subject property was vacant. Similarly, in *Cincinnati Ins. Co. v. KDL, Inc.*, No. 12-4093-KHV, 2017 WL 2555952, at *4 (D. Kan. June 13, 2017), the court denied summary judgment because it was unclear whether a property management company's decision to store machinery in a former grocery store went against its customary operations.

With this guidance in mind, denial of both motions is appropriate here, because there are fact disputes regarding both Meadowbrook and Mr. Abaji's customary operations.[3]

Nationwide's policies covered the periods from January 22, 2021, until January 22, 2022, and January 22, 2023, until January 22, 2024. Both classified the Building as an "Electronics Store." It is not clear why. By January 22, 2021, Meadowbrook had already ceased operating *its* electronics retail businesses, Unitel, out of the Building. Its previous named tenant, Southern Wireless, had also ceased operations by then. And between Southern Wireless's tenancy and Mr. Abaji's tenancy, Meadowbrook rented a portion of the Building to at least one tenant who did not operate an electronics retail business.

Nationwide has not argued that Meadowbrook lacked coverage because it failed to rent to another electronics retail tenant, only that it failed to rent to *any* retail tenant. This

---

[3] The parties point to *Bedford Internet Office Space, LLC v. Travelers Cas. Ins.*, 41 F. Supp. 3d 535 (N.D. Tex. 2015). That court granted summary judgment because the insured was using a premises outside of the insured's customary operations. *Id.* at 545. The case is inapplicable to this matter, as there are fact disputes regarding both Meadowbrook's and Mr. Abaji's customary operations. Nationwide leans in on *Vicksburg Furniture Mfg., Ltd. v. Aetna Cas. & Surety Co.*, 625 F.2d 1167 (5th Cir. 1980), a case applying Mississippi law. In that case, though, the parties went to trial. Plaintiff appealed from the adverse jury verdict, not from a grant of summary judgment. *Id.* at 1169.

6

suggests that the electronics classification was immaterial to the parties' agreement. Because Meadowbrook was issued and then renewed for a policy when it didn't operate an electronics retail store or lease the space to such a tenant, a factfinder could conclude that Meadowbrook believed it had coverage so long as it rented the Building to any tenant, including Mr. Abaji.

Even if Meadowbrook was required to rent the space to a retail tenant, though, there is also a fact dispute as to whether Meadowbrook thought Mr. Abaji *was* a retail tenant. According to Nationwide, the Building was a holding space for Mr. Abaji's merchandise while he looked for a storefront. It emphasizes the undisputed fact that he never had electricity or gas connected. But Meadowbrook believes that Mr. Abaji could have and planned to open his business in its Building. In its view, Mr. Abaji was welcome to do so under the oral agreement.

Neither Mississippi law nor the written terms of the policy answers the questions raised above, and the Court cannot do so itself without weighing the credibility of the parties' evidence. The fact disputes require submitting this issue to a jury. Both motions are, therefore, denied.

### B. There Is a Factual Dispute About the Fire Exclusion.

The policy says Meadowbrook is not covered if it "knew or should have known of any suspension or impairment in any protective safeguard as designated at each premises by symbol in the Declarations" and failed to notify Nationwide of that fact. Docket No. 42 at 16. Additionally, Meadowbrook is not covered if it "failed to maintain any protective safeguard as designated at each premises by symbol in the Declarations and over which [it] has control, in complete working order." *Id.* Neither party has pointed to Mississippi law addressing "complete working order."

7

Nationwide submits that the fire was not covered because the sprinkler system was not in complete working order. Nationwide makes this inference believing that the "post indicator valve for the sprinkler system was in a 'shut position,' and the wrench that turned the post indicator valve was rusted to the valve itself the day after the fire." *Id.* at 16–17. Nationwide's expert has opined that the fire would have been suppressed had the sprinkler system been operational.

Meadowbrook responds that it had no knowledge of any impairments in the Building's sprinkler system. It agrees that the valve which supplied water to the Building was found in the shut position days after the fire. But it maintains that the system was operational because water began to run when the valve was switched to the open position. Meadowbrook believes a jury should answer whether the sprinkler system was operational *at the time of the fire*.

There is a genuine dispute of material fact. Even though the valve was in the "shut" position days after the fire, the question is whether the sprinkler system was in complete working order at the time of the fire. If the system began to operate when switched to the "open" position, the system may have been in complete working order even though the valve was rusty and in the "shut" position after the fire. The answer might turn on whether the insured is responsible for having the valve "open" at all times, or instead whether the responding Fire Department is responsible for turning it to "open" at the time of a fire. Summary judgment would therefore be premature and, as this Court has previously held, "it is more prudent to set close calls for trial than to risk resolving a dispute of fact in one party's favor." *Academy Health,* 2017 WL 3411915, at *2.

**IV.     Conclusion**

The motions for summary judgment are denied.

**SO ORDERED**, this the 2nd day of January, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
